ECEE, INC., et al., Petitioners,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

No. 79–1171.

United States Court of Appeals,
Fifth Circuit.

Feb. 7, 1980.

Neal Powers, Jr., Byron A. Thomas, Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for Ecee, Inc., et al.

Gordon Gooch, Bruce F. Kiely, Charles M. Darling, IV, Washington, D. C., for Tenneco Oil Co., General American Oil Co. of Texas, Texasgulf, Inc., Pennzoil Co., et al.

Bruce F. Kiely, Washington, D. C., Michael B. Silva, Phyllis Rainey, Houston, Tex., for Tenneco Oil Co.

R. Gordon Gooch, Robert C. Murray, Dallas, Tex., for General American Oil Co. of Texas.

George W. Hugo, Houston, Tex., for Texasgulf, Inc.

Charles M. Darling, IV, Washington, D. C., for Pennzoil Co., et al.

David M. Whitney, Houston, Tex., for Aminoil U.S.A., Inc., et al.

John A. Ramsey, Paul J. Broyles, Karen A. Berndt, Houston, Tex., for Texaco, Inc.

Richard G. Harris, Oklahoma City, Okl., for Kerr-McGee Corp.

Nancy J. Hubbard, Washington, D. C., Martin N. Erck, C. Roger Hoffman, Houston, Tex., for Exxon Corp.

Roger L. Brandt, Houston, Tex., for Houston Oil & Minerals Corp.

William A. Sackmann, Findlay, Ohio, for Marathon Oil Co.

Kenneth L. Riedman, Jr., Los Angeles, Cal., for Union Oil Co. of California.

Edward J. Kremer, Dallas, Tex., for Atlantic Richfield Co.

Cloy D. Monzingo, David C. Henri, Houston, Tex., for Getty Oil Co.

Lauren L. Eaton, A. Paul Brandimarte, Jr., Houston, Tex., Jeffrey G. Shrader, Midland, Tex., for Gulf Oil Corp.

Thomas G. Johnson, Houston, Tex., for Shell Oil Co.

Robert R. Nordhaus, Gen. Counsel, Howard E. Shapiro, Sol., J. Paul Douglas, Atty., Washington, D. C., for Federal Energy Regulatory Commission.

Justin R. Wolf, Washington, D. C., for Chevron U.S.A., Inc.

Robert D. Haworth, Houston, Tex., for Mobil Oil Corp.

Harold L. Talisman, Washington, D. C., for Tennessee Gas Pipeline Co.

Arthur S. Berner, Houston, Tex., for Inexco Oil Co.

Larry Pain, Barlesville, Okl., for Phillips Petroleum Co.

Before COLEMAN, Chief Judge, BROWN and TJOFLAT, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

On November 9, 1978, Congress enacted the Natural Gas Policy Act (NGPA), 15 U.S.C.A. §§ 3301 et seq., a comprehensive regulatory statute governing the natural gas industry.[1] Two months later, the Federal Energy Regulatory Commission (FERC) promulgated order No. 21, entitled "Final Regulation Providing for Rehearing of Orders and Rules Issued Under the NGPA (No. RM79–12)." That Order sets forth a rehearing requirement as a jurisdictional prerequisite to obtaining judicial review of rules issued by FERC under the NGPA.[2] In this case we are asked to determine the legality of Order No. 21.

Petitioners[3] contend that the NGPA does not establish a rehearing requirement and that FERC cannot impose such a requirement without statutory authority. FERC contends that Order No. 21 merely implements a specific provision of the NGPA requiring a rehearing and is therefore valid.

In challenging the legality of Order No. 21, a procedural rule setting forth requirements for challenging substantive rules, petitioners do not simultaneously challenge any substantive rules. While FERC has not contested petitioners' right to challenge Order No. 21 in this case, we believe that the threshold question before us is whether there exists a case or controversy under Article III of the United States Constitution.

After first determining that this case presents a case or controversy under Article III, we hold that we do not have jurisdiction to review the legality of Order No. 21 for a reason unrelated to the case or controversy question. Specifically, after a lengthy discourse, we conclude that the NGPA imposes a rehearing requirement as a jurisdictional prerequisite to judicial review of rules issued by FERC under the NGPA. The petitioners, who seek a ruling on the legality of Order No. 21, which is itself a rule promulgated under the NGPA, did not comply with the rehearing requirement of the NGPA. Instead, without filing petitions for rehearing, they sought review of that rule by this Court. Consequently, we are without jurisdiction to review the legality of Order No. 21 and must therefore dismiss the petitions for review. Of course, since the basis of petitioners' case is that Order No. 21 is illegal because the NGPA does not impose a rehearing requirement, our determination that the NGPA *does* impose such a requirement is as a practical matter a ruling on the merits of petitioners' case.[4]

---

1. For a digestible analysis of the NGPA, see Comment, For Gas, Congress Spells Relief N–G–P–A: An Analysis of the Natural Gas Policy Act of 1978, 40 U.Pitt.L.Rev. 429 (1979).

2. Under Order No. 21, the rehearing requirement is met by a timely filing of a petition for rehearing. If FERC fails to act on the petition within 30 days, the petition is deemed denied and the litigant may seek judicial review.

3. Petitioners are: Ecee, Inc.; Tenneco Oil Co.; Pennzoil Co.; Texas Gulf, Inc.; General American Oil Co. of Texas; Aminoil U.S.A., Inc.; Exxon Corp.; Texaco, Inc.; Marathon Oil Co.; Houston Oil and Minerals Corp.; Kerr-McGee Corp.; Union Oil Co. of California; Atlantic Richfield Co.; Getty Oil Co.; Gulf Oil Corp.; and Shell Oil Co.

4. Since the merits of this case are so directly linked to the issue of jurisdiction, we see nothing anomalous about writing a lengthy opinion to determine that we have no jurisdiction over this case. This case is very much like numerous other cases involving "jurisdiction to determine jurisdiction" and presenting situations in which the determination of the jurisdictional question involves essentially the same analysis as the determination of the case on the merits. See, e. g., *United States v. United Mine Workers*, 1957, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; *Nestor v. Hershey*, D.C.Cir., 1969, 138 U.S.App.D.C. 73, 425 F.2d 504; *Means v. Wil-*

*Ecce Come* . . .

Article III, Section 2 of the Constitution limits federal court jurisdiction to "cases" and "controversies." The case or controversy requirement stems both from constitutional requirements and from prudential considerations of judicial self-restraint. *Warth v. Seldin*, 1974, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343, 354.

The case or controversy problem presented here is whether this case is ripe for review. Underlying the ripeness doctrine is the principle that cases should not be heard by a court before the issues have become concrete and focused in the context of a live and genuine dispute. *Abbott Laboratories v. Gardner*, 1967, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691.

In 1967, the Supreme Court decided three related cases concerning the ripeness of challenges to administrative action. *Abbott Laboratories v. Gardner, supra; Toilet Goods Association v. Gardner*, 1967, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697; *Gardner v. Toilet Goods Association*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704. The Supreme Court found two of the three cases, *Abbott Laboratories, supra*, and *Gardner v. Toilet Goods, supra*, ripe for review. *Abbott Laboratories* involved regulations by the Commissioner of Food and Drugs requiring that the generic name of a drug be printed each time the trade name was used. *Gardner v. Toilet Goods* involved a challenge to regulations promulgated by the Commissioner of Food and Drugs prescribing conditions for the use of color additives in foods, drugs, and cosmetics. The Court found these two cases ripe for review even though the regulations had not yet been enforced. On the other hand, in *Toilet Goods Association v. Gardner, supra*, the Court held not ripe a challenge to regulations authorizing the Commissioner of Food and Drugs to order under certain circumstances inspection of manufacturing facilities and to refuse to certify color additives unless and until such an inspection was allowed.

■ In each of the three cases, the Court reached its decision by applying precise factors set forth in the first case, *Abbott Laboratories*. The most important of these factors are: (1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action;" (3) whether the challenged agency action has or will have a direct and immediate impact upon the petitioners; and (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agen-

*son*, D.S.D., 1974, 383 F.Supp. 378, *modified on other grounds,* 8 Cir., 1975, 522 F.2d 833, *cert. denied,* 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364. As the District Court in *Means* stated:

When the question of jurisdiction depends upon the same facts that are involved in the disposition of the merits, the Court will retain the case and determine the issue, as it always has jurisdiction to determine its jurisdiction. 383 F.Supp. at 381.

The case of *Nestor v. Hershey, supra*, involves a situation very similar to that involved here. In that case, a second-year graduate student in chemistry at the University of Maryland received an order to report for induction into military service. He unsuccessfully sought a deferment from service until the end of the then current academic year. Section 10(b)(3) of the Military Selective Service Act of 1967, 50 U.S.C.A.App. §§ 451 *et seq.*, read literally, appeared to foreclose all preinduction judicial review. However, the Supreme Court had recently determined that Section 10(b)(3) did not preclude judicial review of draft board actions which were outside of or in clear violation of the statutory scheme. The Court was thus forced to examine the merits of the case to determine whether it had jurisdiction:

Under our view of the Supreme Court's decision in the *Oestereich* case, the issue of jurisdiction is inextricably intertwined with the merits of the controversy, that is, with the proper construction of the student deferment sections of the [Military Selective Service Act]; in short, the question of jurisdiction hinges upon whether the deferment sought is mandated by statute or is within the discretion of the draft board. If the deferment is mandatory, we have jurisdiction. On the other hand, if appellant's local draft board has discretion to deny his request for a [deferment], we have no jurisdiction to review its action. Since we always have jurisdiction to determine our jurisdiction, we turn now to the merits of appellant's claim that he is entitled to a mandatory deferment under the Act. [Citing *United Mine Workers, supra*].

425 F.2d at 511.

cy. *Abbott Laboratories, supra,* 387 U.S. at 149–54 [5], 87 S.Ct. at 1515–18, 18 L.Ed.2d at 691–95. See also *Dresser Industries, Inc. v. United States,* 5 Cir., 1979, 596 F.2d 1231, 1235. The application of these factors here reveals that this case is ripe for review.

First, the issue presented is a purely legal one: whether the NGPA imposes a rehearing requirement with respect to rules issued by FERC. No set of facts can aid this Court in determining whether the Act authorizes a rehearing requirement. Thus, " 'we will be in no better position later than we are now' to decide this question." *Duke Power Co. v. Carolina Env. Study Group,* 1978, 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595, 617, *quoting Regional Rail Reorganization Act Cases,* 1974, 419 U.S. 102, 145, 95 S.Ct. 335, 359, 42 L.Ed.2d 320, 354.[6]

Second, order No. 21 is clearly "final agency action" under 5 U.S.C.A. § 704. The order will not be the subject of any further proceedings at the Commission. Its finality is reflected in its very title: "Final Regulation Providing for Rehearing of Orders and Rules Issued Under the NGPA."

Third, Order No. 21 has a direct, immediate, and continuing impact upon petitioners. Petitioners are natural gas producers whose wellhead sales are subject to FERC regulation under the NGPA. Acting under the NGPA, FERC has issued and continues to issue substantive rules directly affecting petitioners. Whenever a rule is issued, petitioners are faced with a classic "Hobson's choice." If petitioners seek direct judicial review of the substantive rule and the Court determines that a rehearing was necessary, then petitioners have lost their right to challenge the substantive rule because they have failed to file for rehearing within the thirty day limitation imposed by Order No. 21 and the NGPA. Thus, petitioners must obey a rule which may in fact be unlawful. On the other hand, if petitioners seek rehearing of the substantive rule, they cannot simultaneously obtain judicial review of that rule. See *Outland v. Civil Aeronautics Board,* D.C.Cir., 1960, 109 U.S. App.D.C. 90, 284 F.2d 224, 227–28. During the rehearing process, petitioners must comply with rules they believe to be unlawful. And the very act of seeking rehearing of the substantive rule would only serve to leave the rehearing requirement intact and applicable to future substantive rules. The only "safe" but effective option is to attack Order No. 21 without simultaneously attacking a substantive rule.[7]

---

5. In addition to enumerating these precise factors, the Court in *Abbott Laboratories* stated that there is a presumption of judicial review to one allegedly aggrieved because of agency action. 387 U.S. at 140, 87 S.Ct. at 1510, 18 L.Ed.2d at 686. See generally Vining, Direct Judicial Review and the Doctrine of Ripeness in Administrative Law, 1971, 69 Mich.L.Rev. 1443, 1493–95.

6. In this case, as in *Abbott Laboratories,* "both sides have approached this case as one purely of congressional intent, and . . . the Government made no effort to justify the regulation in factual terms." 387 U.S. at 149, 87 S.Ct. at 1516, 18 L.Ed.2d at 692.

7. We believe that the imminent threat of future injury is itself enough to make this case ripe for review. "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." *Pennsylvania v. West Virginia,* 1923, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117, 1130. See also *Regional Rail Reorganization Act Cases, supra,* 419 U.S. at 143, 95 S.Ct. at 358, 42 L.Ed.2d at 353.

In this case, however, there is even more than an imminent threat of future injury. Many of the petitioners in this case have already suffered delay, expense, and uncertainty because the legality of Order No. 21 remains in doubt. In another case currently before this Court, *Ecee, et al. v. FERC,* No. 78–3688, filed December 7, 1978, the litigants, many of whom are involved here, were faced with the dilemma of whether to file for rehearing or seek direct judicial review of FERC's interim regulations to carry out the NGPA. Even though the petitioners desired direct judicial review and believed they were entitled to it, they nonetheless chose not to risk the possibility of this Court holding that a rehearing was required. Instead, with the approval of this Court, petitioners and FERC stipulated to the following:

a. All persons presently seeking to obtain judicial review of the *Interim Regulations* have, or will, file a petition for rehearing of the order issued November 29, 1978, and published December 1, 1978, at 43 Fed.Reg. 56448, as required by Commission Order No. 21; all persons may include in their respective petitions for rehearing such protective language as they deem necessary to

Fourth, resolution of the case before us will clearly expedite, rather than delay, FERC enforcement of its rules. The legality of several FERC rules remains in a state of uncertainty, and this uncertainty stems in large part from the confusion surrounding the rehearing question.[8] FERC's implementation of rules is necessarily impeded when the review process for determining the legality of rules is so muddied and unclear. Moreover, the confusion surrounding the rehearing question leaves FERC in a state of uncertainty as to whether and when it must file the record. In short, prompt resolution of the rehearing question will foster more rapid and efficient enforcement by FERC of its rules.

Since the issue presented is purely legal, since Order No. 21 is final agency action, since the challenged agency action has a direct impact upon petitioners, and since resolution of the controversy will foster bet-

> preserve their respective positions in the Order No. 21 Case. The Commission will invite any person subsequently petitioning for review of the *Interim Regulations* to join in this agreement. The Commission also reserves the right to move to dismiss petitions for review filed by any persons who do not seek rehearing of the *Interim Regulations*, after a decision is rendered in the Order No. 21 case.
>
> b. The Commission intends to continue the on-going proceedings in Docket No. RM79–3, which may terminate in a final order (or orders) on rehearing subject to judicial review which disposes of all petitions for rehearing of the *Interim Regulations*.
>
> c. If, in the Order No. 21 Case, Commission Order No. 21 is unconditionally affirmed, the following will occur:
>
> i. Petitioners, subject to their right to petition the Supreme Court for a writ of certiorari and a stay of that decision, will dismiss the petitions for review of the *Interim Regulations* filed in this and related cases.
>
> ii. Judicial review of the Commission's orders in Docket No. RM79–3 will proceed on new petitions for review of the Commission's final order or orders on rehearing.
>
> d. If, in the Order No. 21 Case, Commission Order No. 21 is reversed prior to the Commission issuing its final order or orders on rehearing in Docket No. RM79–3, the following will occur:
>
> i. This case will proceed on the presently filed, and any subsequently filed petitions for review of the *Interim Regulations*, which will be deemed to include any changes adopted on rehearing.
>
> ii. The Commission, subject to its right to petition the Supreme Court for a writ of certiorari and a stay of that decision, will promptly file the record in Docket No. RM79–3 and proceedings shall go forward as provided [in this stipulation].
>
> iii. Judicial review of any orders issued in response to comments on, and any petitions for rehearing of, the *Interim Regulations* may be had by the filing of peti-
>
> tions for review of those orders and such petitions may be consolidated with this case.
>
> iv. The Commission will continue the proceedings in Docket No. RM79–3 in a manner not inconsistent with the Court of Appeals' jurisdiction.
>
> e. If the Commission issues its final order or orders on rehearing in Docket No. RM79–3 prior to a decision in the Order No. 21 Case, all parties seeking to obtain review of the Commission's orders in Docket No. RM79–3 will file petitions for review of the Commission's orders in the appropriate United States Court of Appeals, and proceedings shall go forward as provided [in this stipulation].
>
> f. If the Commission has not issued a final order or orders on rehearing in Docket No. RM79–3 prior to a decision in the Order No. 21 Case, the following will occur:
>
> i. If Order No. 21 is unconditionally affirmed, the provisions of paragraph c will govern, and the proceedings in Docket No. RM79–3 will continue to the issuance of a final order or orders on rehearing.
>
> ii. If Order No. 21 is reversed, the provisions of paragraph d will govern, and the Commission will continue proceedings in Docket No. RM79–3 in a manner not inconsistent with the Court of Appeals' jurisdiction.
>
> Obviously, petitioners have tried to minimize their injury. But it cannot be denied that regardless of how we rule today with respect to the legality of Order No. 21, petitioners have suffered delay, expense, and uncertainty. A mere reading of the stipulation reveals the clear need for a prompt resolution of the rehearing question. And the stipulation reveals in dramatic terms how the case before us will have a direct impact upon other cases involving challenges to FERC rules.
>
> **8.** For an example of one such situation, see note 7, *supra*.

ter enforcement by FERC of its rules, we hold that this case is ripe for review.[9]

### Ecee Go.

■ Having found this case ripe for review, we now proceed to the issue of the legality of Order No. 21. FERC concedes that this case is solely one of statutory construction. That is, if the NGPA itself does not establish a rehearing requirement, then FERC cannot impose such a requirement as a jurisdictional prerequisite to judicial review. See *Levers v. Anderson,* 1945, 326 U.S. 219, 222 n.4, 66 S.Ct. 72, 74 n.4, 90 L.Ed. 26, 29 n.4.

This case involves the construction of the NGPA for another—and more fundamental —reason. Order No. 21 is a rule issued by FERC. In challenging the rule, petitioners did not first seek a rehearing. Consequently, if the NGPA imposes a rehearing re-

quirement as a jurisdictional prerequisite to judicial review, then we have no jurisdiction to review the legality of Order No. 21 and must dismiss the appeal.

The NGPA was enacted in 1978. Prior to its enactment, most natural gas questions arose under the Natural Gas Act, 15 U.S. C.A. §§ 717 *et seq.* (NGA). The NGA has one simple provision pertaining to judicial review: 15 U.S.C.A. § 717r(a).[10] That provision expressly requires a rehearing as a jurisdictional prerequisite to judicial review. And that provision applies to rules as well as non-rulemaking orders.[11]

The NGPA, on the other hand, has a much more elaborate—and confusing—scheme regarding judicial review. The judicial review section of the NGPA is 15 U.S.C.A. § 3416 (hereafter referred to as § 3416).[12] Section 3416 is divided into four parts. Subsection (a) pertains to most non-

9. Our holding on the ripeness question eliminates any doubts concerning standing and the rendering of advisory opinions. The focus of standing is whether the particular party has alleged a personal stake in the outcome. See, e. g., *Warth v. Seldin, supra,* 422 U.S. at 498, 95 S.Ct. at 2204, 45 L.Ed.2d at 354. There can be no doubt that the petitioners, natural gas producers subject to FERC regulation, are the proper parties to challenge Order No. 21. And our analysis that the case is ripe for review demonstrates injury cognizable for purposes of standing. *Cf. Duke Power Co. v. Carolina Env. Study Group, supra,* 438 U.S. at 81, 98 S.Ct. at 2635, 57 L.Ed.2d at 616 (injury for standing purposes satisfies ripeness requirement). Nor does this case constitute an advisory opinion, a concept which largely overlaps with the notion of ripeness. Far from "advising what the law would be upon a hypothetical state of facts," *Aetna Life Ins. Co. v. Haworth,* 1937, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621, this case presents a live, concrete dispute, with a clear, direct impact on the parties.

10. 15 U.S.C.A. § 717r(a) provides:
(a) Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the

Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b) of this section, the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.

11. Although § 717r(a) refers only to orders, that term includes rules as well, since FERC adopts its rules by means of orders. See, e. g., *Union Oil Co. of California v. Federal Power Commission,* 10 Cir., 1976, 542 F.2d 1036 (involving review of order adopting and effectuating a rule).

12. For convenience, § 3416 is reproduced in its entirety:
§ 3416. Judicial review
(a) Orders.—
(1) In general.—The provisions of this subsection shall apply to judicial review of any order, within the meaning of section 551(6) of Title 5 (other than an order assessing a civil penalty under section 3414(b)(4) of this title or any order under section 3362 of this title or any order under section 3363 of this title), issued under this chapter and to any final agency action under this chapter required to

be made on the record after an opportunity for an agency hearing.

(2) Rehearing.—Any person aggrieved by any order issued by the Commission in a proceeding under this chapter to which such person is a party may apply for a rehearing within 30 days after the issuance of such order. Any application for rehearing shall set forth the specific ground upon which such application is based. Upon the filing of such application, the Commission may grant or deny the requested rehearing or modify the original order without further hearing. Unless the Commission acts upon such application for rehearing within 30 days after it is filed, such application shall be deemed to have been denied. No person may bring an action under this section to obtain judicial review of any order of the Commission unless—

(A) such person shall have made application to the Commission for a rehearing under this subsection; and

(B) the Commission shall have finally acted with respect to such application.

For purposes of this section, if the Commission fails to act within 30 days after the filing of such application, such failure to act shall be deemed final agency action with respect to such application.

(3) Authority to modify orders.—At any time before the filing of the record of a proceeding in a United States Court of Appeals, pursuant to paragraph (4), the Commission may, after providing notice it determines reasonable and proper, modify or set aside, in whole or in part, any order issued under the provisions of this chapter.

(4) Judicial review.—Any person who is a party to a proceeding under this chapter aggrieved by any final order issued by the Commission in such proceeding may obtain review of such order in the United States Court of Appeals for any circuit in which the party to which such order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia circuit. Review shall be obtained by filing a written petition, requesting that such order be modified or set aside in whole or in part, in such Court of Appeals within 60 days after the final action of the Commission on the application for rehearing required under paragraph (2). A copy of such petition shall forthwith be transmitted by the clerk of such court to any member of the Commission and thereupon the Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of Title 28. Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set

aside such order in whole or in part. No objection to such order of the Commission shall be considered by the court if such objection was not urged before the Commission in the application for rehearing unless there was reasonable ground for the failure to do so. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the proceedings before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as the court deems proper. The Commission may modify its findings as to the facts by reason of the additional evidence so taken, and shall file with the court such modified or new findings, which if supported by substantial evidence, shall be conclusive. The Commission shall also file with the court its recommendation, if any, for the modification or setting aside of the original order. The judgment and decree of the court, affirming, modifying, or setting aside, in whole or in part, any such order of the Commission, shall be final subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of Title 28.

(5) Orders remain effective.—The filing of an application for rehearing under paragraph (2) shall not, unless specifically ordered by the Commission, operate as a stay of the Commission's order. The commencement of proceedings under paragraph (4) shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

(b) Review of rules and orders.—Except as provided in subsections (a) and (c) of this section, judicial review of any rule or order, within the meaning of section 551(4) of Title 5, issued under this chapter may be obtained in the United States Court of Appeals for any appropriate circuit pursuant to the provisions of chapter 7 of Title 5, except that the second sentence of section 705 thereof shall not apply.

(c) Judicial review of emergency orders.—Except with respect to enforcement of orders or subpenas under section 3364(a) of this title, the Temporary Emergency Court of Appeals, established pursuant to section 211(b) of the Economic Stabilization Act of 1970, as amended, shall have exclusive original jurisdiction to review all civil cases and controversies under section 3361, 3362, or 3363 of this title, including any order issued, or other action taken, under such section. The Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies

rulemaking orders, including orders as defined in 5 U.S.C.A. § 551(6) [13] (these various non-rulemaking orders are hereafter referred to collectively as "non-rulemaking orders"). Subsection (b), which is at issue in this case, pertains to rules as defined in 5 U.S.C.A. § 551(4).[14] Subsection (c) pertains to certain emergency orders. Subsection (d) pertains to pricing determinations made pursuant to § 3347(c) of the NGPA.

Subsections (a), (c), and (d) are relatively straightforward. Under subsection 3416(a), a rehearing of non-rulemaking orders is clearly a prerequisite to judicial review. Regarding emergency orders, subsection 3416(c) provides for direct appeal to the Temporary Emergency Court of Appeals. Subsection 3416(d), by incorporating § 717r of the NGA, makes the NGA rehearing requirement applicable to the incremental pricing determinations made under subsection 3347(c) of the NGPA.

More difficult than subsections (a), (c) and (d) is subsection (b). Subsection 3416(b) provides in its entirety:

(b) Review of rules and orders.—Except as provided in subsections (a) and (c) of this section, judicial review of any rule or order, within the meaning of section 551(4) of Title 5, issued under this chapter may be obtained in the United States Court of Appeals for any appropriate circuit pursuant to the provisions of chapter 7 of Title 5, except that the second sentence of section 705 thereof shall not apply.

To put it mildly, subsection 3416(b) is not a model of statutory clarity. The various references to other statutory provisions provide a glimmer of hope that a cross-reference will wash away any apparent ambiguity. But alas—the cross-references only increase the number of dead ends within the statutory labyrinth.

Nonetheless, our initial task is clear. We must grapple with the precise wording of the statute, since "[t]he starting point in every case involving construction of a statute is the language itself." *Ernst & Ernst v. Hochfelder,* 1976, 425 U.S. 185, 197, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668, 679, *quoting Blue Chip Stamps v. Manor Drug Stores,* 1975, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539, 561.

In this case, both sides have presented elaborate arguments to demonstrate why their view, and their view alone, is the correct one. Because the statute is so poorly drafted, the arguments of both sides are not merely supportable, but impressive. We think it useful—if not essential—to

---

arising under section 3364(a)(2) of this title; such appeals shall be taken by the filing of a notice of appeal with the Temporary Emergency Court of Appeals within thirty days after the entry of judgment by the district court. Prior to a final judgment, no court shall have jurisdiction to grant any injunctive relief to stay or defer the implementation of any order issued, or action taken, under section 3361, 3362, or 3363 of this title.

(d) Judicial review of certain incremental pricing determinations.—Notwithstanding the preceding provisions of this section, any final determination made under section 3347(c) of this title shall be subject to judicial review in accordance with the provisions of the Natural Gas Act applicable to judicial review of any final determination respecting the grant or denial of any authority to import natural gas or liquefied natural gas. Pub.L. 95–621, Title V, § 506, Nov. 9, 1978, 92 Stat. 3404.

**13.** 5 U.S.C.A. § 551(6) provides:

"order" means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing.

**14.** 5 U.S.C.A. § 551(4) provides:

"rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing.

Although subsection 3416(b) refers to "rules and orders," the definitional reference is to 5 U.S.C.A. § 551(4), which defines "rules." The phrase "rules and orders" and not simply "rules" is used because, as previously stated, FERC adopts its rules by means of orders. To avoid confusion, we simply use the term "rules" instead of "rules and orders."

present in some detail the construction of subsection 3416(b) given by each side.[15]

Petitioners correctly point out that subsection 3416(b) does not even mention the word "rehearing" and that reviewability is made subject to the applicable provisions of the Administrative Procedure Act (APA), 5 U.S.C.A. §§ 701–06. Petitioners reason from these observations that direct judicial review is allowed under 5 U.S.C.A. § 704, which provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

Petitioners read 5 U.S.C.A. § 704 as providing for direct judicial review because subsection 3416(b) does not expressly require a rehearing.

Petitioners buttress their interpretation by relying on the structure of § 3416 itself. They point out that the provision is divided into four subsections, each concerning a different type of "order," and each providing its own scheme regarding judicial review. In particular, they cite § 3416(a)(1), claiming that under § 3416(a)(1), the rehearing provisions of subsection (a) apply *only* to orders specifically defined in (a)(1), and that subsection (b)'s rules are not included among the kinds of orders specified in (a)(1).

FERC agrees that 5 U.S.C.A. § 704 is relevant as a starting point, but contends that here, that provision is displaced by the rehearing requirement of subsection 3416(b). In reading subsection 3416(b) as mandating a rehearing prior to judicial review, FERC engages in a creative journey through the statutory maze created by Congress.

First, FERC points out that § 3416(a)(2), which requires a rehearing prior to obtaining judicial review, specifically applies to all orders issued by FERC *in any proceeding.* FERC points out that the word "proceeding" includes rulemaking as well as adjudication. 5 U.S.C.A. § 551(12) (defining "agency proceeding" as including rulemaking, adjudication, and licensing).[16] Second, FERC points out that the word "section" is used in § 3416(a)(2), while the words "subsection" and "paragraph" are used elsewhere in § 3416. Specifically, § 3416(a)(2) states that "[n]o person may bring an action *under this section* to obtain judicial review of any order *of the Commission*" without first applying for a rehearing. (Emphasis added.) FERC reasons from these observations that the rehearing provision of (a)(2) is applicable to each and every subsection dealing with FERC proceedings. Subsections (a) and (b) deal with FERC proceedings, while subsections (c) and (d) do not. Thus, concludes FERC, § 3416(a)(2)'s rehearing requirement explicitly applies to the rules specified in subsection 3416(b).

FERC buttresses its argument that § 3416(a)(2) applies to the rules specified in

---

**15.** To fully understand these arguments, repeated references to the statute itself may be necessary. See note 12, *supra.*

**16.** A problem with heavy reliance on this argument is that "order" is defined by 5 U.S.C.A. § 551(6) as *excluding* rulemaking. Hence, § 3416(a)(2) could be read as being limited to non-rulemaking proceedings. However, the traditional definition of "order" may be inapplicable to FERC which, as we have stated, has a practice of issuing rules and regulations in "or-

ders." E. g., Final Regulation for the Implementation of Section 401 of the Natural Gas Policy Act, Docket No. RM79–15, Order No. 29, 44 Fed.Reg. 26855 (May 8, 1979) (order adopting rule). Indeed, petitioners concede that § 717r(a) of the NGA, which also uses the word "order," applies to rules as well as to non-rulemaking orders. It is thus not unreasonable to contend that "orders" include "rules" as well as non-rulemaking orders.

subsection 3416(b) by pointing out that subsection 3416(b) explicitly incorporates subsection (a) with the introductory clause "[e]xcept as provided in subsections (a) and (c) . . . ." FERC contends that such language conclusively demonstrates that each subsection is not to be read in a vacuum.

Petitioners' reading of subsection 3416(b) has more superficial appeal than FERC's reading. The immediate tendency of one trained in the law is to reason that if subsection 3416(a) mentions rehearing while subsection (b) does not, then the rehearing provision of subsection (a) does not apply to the rules mentioned in subsection (b). The problem with this approach is that it assumes that each subsection of 3416 is a self-contained entity. Upon successive readings of subsection (b), it becomes increasingly clear—although never crystal clear—that subsection (b) explicitly incorporates the rehearing provision contained in § 3416(a)(2). In particular, and without again rehashing FERC's arguments, subsection (b) begins with the phrase "[e]xcept as provided in subsections (a) and (c) . . ." This language of incorporation refutes the argument that the provisions of (a) have no relationship to (b). Furthermore, the rehearing provision in (a)(2) applies to all parts of the "section" dealing with FERC proceedings. The term "section" encompasses the four subsections. This is clear because throughout § 3416, Congress uses the term "subsection" to refer solely to subsection (a), (b), (c) or (d). In addition, we recognize the well-established principle that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co. v. Federal Communications Commission,* 1969, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, 384. Accordingly, we conclude that the language of § 3416 demonstrates that a rehearing requirement[17] is a jurisdictional prerequisite[18] to judicial review of rules issued by FERC.[19]

Although the language of the statute is by itself enough to resolve the case before us, we do not base our holding solely on the wording of the statute. Even assuming that petitioners' construction is more consistent with the literal wording of the statute than FERC's construction, we would nonetheless be constrained to adopt FERC's view. The Supreme Court, in setting forth principles to govern statutory construction, has stated:

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. *When that meaning has led to absurd or futile re-*

---

**17.** It should be underscored that under § 3416(a)(2), as under Order No. 21, see note 2, *supra,* the rehearing requirement is met by a proper application for a rehearing regardless of what action—if any—is taken by FERC. If after 30 days FERC has not acted on the petition, the petition will be deemed denied and the petitioner may seek judicial review.

**18.** Petitioners do not contend that the rehearing provision of § 3416(a)(2) is not jurisdictional in nature, but only that this provision does not apply to rules. The language of § 3416(a)(2), which we read as being applicable to rules, makes clear that the rehearing requirement is jurisdictional, since it provides that *no* person shall obtain judicial review without first complying with the rehearing requirement. Thus, like § 717r of the NGA, see *Boston Gas Co. v. Federal Energy Regulatory Commission,*

1 Cir., 1978, 575 F.2d 975, 977, and the cases cited therein, the rehearing requirement set forth in § 3416(a)(2) is jurisdictional.

**19.** In an amicus brief filed in this case, the United States expressed concern that a decision by this Court favorable to FERC might be read as a holding that the rehearing requirement applies to *all* rules issued under the NGPA. The Departments of Agriculture and Energy also issue rules pursuant to the NGPA. Unlike FERC, however, these Departments have not imposed a rehearing requirement. Since the rehearing requirement in § 3416(a)(2) —which we read as being applicable to subsection 3416(b)—specifically applies solely to FERC, we intimate no view with respect to procedures governing judicial review of NGPA rules issued by the Departments of Agriculture and Energy.

*sults, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words.*

Perry v. Commerce Loan Co., 1966, 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827, 833–34, quoting United States v. American Trucking Assns., 1940, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345, 1350 (emphasis added). See also Quinn v. Butz, D.C. Cir., 1975, 166 U.S.App.D.C. 363, 373, 510 F.2d 743, 753 ("[A] construction of a statute

leading to unjust or absurd consequences should be avoided."); *Worthy v. United States,* 5 Cir., 1964, 328 F.2d 386, 391 ("A meaning will not be attributed to statutory language which would lead to an abuse or unjust result."). As we demonstrate below, adoption of petitioners' interpretation would lead to absurd results, results that Congress clearly could not have intended.[20]

The NGA and the NGPA are to a large extent interrelated. In fact, it is often not possible to draw a precise line separating the boundaries of the two Acts. Implementation of many NGPA provisions requires conduct by FERC authorized under both Acts.[21] As a result, the promulgation of

---

**20.** Evidence of what Congress *did* intend is extremely sparse, and we therefore are forced to determine through reason and logic what Congress must have intended.

As to clear-cut evidence of congressional intent, petitioners rely almost exclusively on a staff analysis submitted by a FERC Commissioner to Senator Jackson, Chairman of the Senate Committee on Energy and Natural Resources, at the time Congress was considering the Conference Report (which was ultimately enacted as the NGPA). The analysis suggested that a rehearing was not required as to rules. This analysis was *not* the view of the Commission as a whole. Indeed, the analysis explicitly indicated that the interpretation expressed therein may differ from that ultimately given by the Commission acting as a whole. To say the least, this evidence of "congressional intent" is extremely weak.

FERC relies primarily on the Conference Report itself, and quotes the following language contained therein: "The conference agreement provides judicial review based upon the Natural Gas Act provision . . . ." H.R.Rep.No. 95–1752 at 122, *reprinted in* 7 U.S.Code Cong. & Admin.News, Jan. 1979, 95th Cong., 2d Sess., p. 8800 at 9039 (1978). A reading of that sentence alone seems to provide strong evidence for FERC's position. Yet, when the language relied upon by FERC is read in the context of the full section, its importance becomes much more doubtful. The entire passage provides:

The House passed bill provided authority for persons aggrieved by rules and orders under the Act to obtain judicial review in the United States Court of Appeals for the District of Columbia Circuit.

The Senate passed bill did not contain a comparable provision, relying instead upon authority under the Natural Gas Act for persons aggrieved by orders to obtain judicial review in the United States Court of Appeals

for the District of Columbia Circuit, or in the circuit where the person is located or has his principal place of business.

The conference agreement provides judicial review based upon the Natural Gas Act provision described above.

The language quoted by FERC appears to refer not to the rehearing question but to questions of venue.

What this language does suggest, however, is that perhaps Congress organized § 3416 the way it did not to differentiate on the rehearing question, but rather to make clear that rules under the NGPA are subject to review by the Courts of Appeals. Originally, under the NGA, courts held that rules were not reviewable by the Courts of Appeals. See, e. g., *Magnolia Petroleum Co. v. Federal Power Commission,* 5 Cir., 1956, 236 F.2d 785, 791–93, *cert. denied,* 1957, 352 U.S. 968, 77 S.Ct. 356, 1 L.Ed.2d 322. While it is now clear the NGA rules based on a record are reviewable by the Courts of Appeals, e. g., *City of Chicago v. Federal Power Commission,* D.C.Cir., 1971, 128 U.S.App.D.C. 107, 114–117, 458 F.2d 731, 738–41, Congress no doubt sought to short-circuit a similarly tortuous history regarding NGPA rules by making clear that these rules as well were reviewable by the Courts of Appeals. Having said all of this, however, we are nonetheless uncomfortable in concluding that because Congress had one reason for bifurcating the provisions of § 3416, a concern about the rehearing question did not also play a part. Thus, we are unable to say that *this* legislative history rebuts petitioners' reading of § 3416.

In sum, neither side has offered much in the way of congressional intent regarding the rehearing question. Nor are we able to uncover anything of value on our own.

**21.** FERC cites several examples. For instance, under the NGPA, maximum lawful prices are to be based on prices established under the NGA.

rules may entail the exercise of authority under both the NGA and the NGPA.

Were we to hold that judicial review of NGPA rules need not be preceded by a rehearing, utter chaos would result. A court attempting to review a case decided without a rehearing would be faced with the impossible task of separating out the separable elements of the rule which are based on the NGA and dismissing those for failure to comply with § 717r(a) of the NGA, while reviewing the NGPA–based matters. Where the authority for a particular rule arises *simultaneously* under both Acts, a court would be left without guidance in determining whether to hear the case or dismiss for failure to comply with the rehearing requirement. Congress simply could not have intended this confusion.[22]

Moreover, subsection 3416(b) states nothing about venue and nothing about the filing of the record. We cannot believe that Congress, having addressed these matters so clearly and carefully in § 3416(a)(4), which in petitioners' view applies only to orders specified in § 3416(a)(1), could have intended to provide no direct guidance as to these matters when rules are involved. Petitioners' view requires that whenever a challenge is made to a rule, petitioners and FERC must hunt through the Administrative Procedure Act for answers regarding such matters as venue and record filing. Under the view we adopt today, the de-

tailed provisions of § 3416(a)(4) relating to such questions as venue and the filing of the record control when rules are involved.[23]

Additionally, our construction of subsection 3416(b) is supported by sound policy considerations. In a case such as this, where the wording of the statute is so confusing and where direct statements of congressional intent are lacking,[24] it is appropriate to look to considerations of policy. As the Supreme Court has stated:

> It is . . . proper [to consider] what may be described as policy considerations when we come to flesh out the portions of the law with respect to which . . . congressional enactment [does not] offer conclusive guidance.

*Blue Chip Stamps v. Manor Drug Stores,* supra, 421 U.S. at 737, 95 S.Ct. at 1926, 44 L.Ed.2d at 550.

The purpose of a rehearing requirement is to give the administrative agency an initial opportunity to correct its errors. Additionally, a rehearing gives a court the benefit of prior agency consideration and analysis of issues which involve technical questions about which the agency has particular expertise, expertise not typically possessed by courts. As the Supreme Court has stated in a closely related context:

> The necessity for prior administrative consideration of an issue is apparent where, as here, its decision calls for the application of technical knowledge and

---

15 U.S.C.A. §§ 3315, 3316, and 3319. Similarly, the implementation of the NGPA's incremental pricing provisions (15 U.S.C.A. §§ 3341–48) and curtailment provisions (15 U.S.C.A. §§ 3391–94) requires the exercise of power under both the NGA and the NGPA.

**22.** Petitioners point out that under FERC's view relating to standards of review, this problem of separating out portions of rules issued under one Act from portions issued under the other cannot be avoided. FERC contends that rules issued under the NGPA are subject to an "arbitrary and capricious" test, while rules issued under the NGA are governed by the "substantial evidence" test. This Court has not so held and we leave that question to another day. We do point out, however, that in attempting to discern congressional intent regarding standards of review, the possible "separating out" problem created by FERC's position on this

question would weigh heavily against an interpretation that rules adopted pursuant to the NGPA are reviewed under a different standard than rules adopted pursuant to the NGA. Even assuming FERC is correct, the "separating out" problem becomes important as a practical matter only when the outcome in a particular case would differ depending on which standard is applied. And in numerous situations, the two review criteria tend to converge. *Cf. Associated Indus. of New York State, Inc. v. United States Department of Labor,* 2 Cir., 1973, 487 F.2d 342, 349–50.

**23.** As suggested in note 22, *supra,* we intimate no view as to whether the "substantial evidence" test set forth in § 3416(a)(4) applies to FERC rules under the NGPA.

**24.** See note 20, *supra.*

experience not usually possessed by judges. The Federal Power Commission is an administrative agency the decisions of which involve those difficult problems of policy, accounting, economics and special knowledge that go into public utility rate making.

*Federal Power Commission v. Colorado Gas Co.,* 1954, 348 U.S. 492, 500–01, 75 S.Ct. 467, 472, 99 L.Ed. 583, 593. See also *North Carolina v. Federal Power Commission,* D.C. Cir., 1976, 174 U.S.App.D.C. 475, 478, 533 F.2d 702, 705.

Most rules issued by FERC are extremely technical and require significant expertise. Courts would be aided greatly by FERC being given an opportunity to examine its alleged errors through a rehearing process.

To summarize, we conclude that a rehearing is required as a jurisdictional prerequisite to judicial review. Our conclusion is supported by the wording of the statute. Moreover, our holding recognizes that because of the interrelationship between the NGPA and the NGA, to permit direct judicial review of NGPA rules while requiring a rehearing as to NGA rules would lead to absurd results. Finally, the rehearing requirement is sound as a matter of policy.

Ironically, the conclusion we reach on the rehearing question means that we have no jurisdiction to consider the legality of Order No. 21, which is itself a rule issued by FERC under the NGPA. As previously stated, in challenging Order No. 21, petitioners did not seek a rehearing before the Commission. Instead, they sought direct judicial review of that rule. Since a rehearing is a jurisdictional prerequisite to judicial review, we must dismiss the appeal.[25] It is clear, however, that since Order No. 21 itself deals with the rehearing question, and since petitioners' attack on Order No. 21 is based on the argument that the NGPA does not impose a rehearing requirement, our

interpretation of the NGPA and our dismissal of the appeal for lack of jurisdiction is in reality a ruling on the merits.[26]

APPEAL DISMISSED.

---

**25.** Petitioners argue that if we determine that Order No. 21 is valid, we should nonetheless hold that FERC cannot apply it retroactively. We have concluded, however, that we are without jurisdiction to review the legality of Order No. 21. It necessarily follows that we have no jurisdiction to review the legality of the provi-

sion of that Order making the rehearing requirement retroactive.

**26.** See note 4, *supra.*