The BALF COMPANY, INC.

v.

**Woodrow Wilson GAITOR, in his capacity as City Manager of the City of Hartford, and The City of Hartford.**

**Civ. No. H–80–451.**

United States District Court,
D. Connecticut.

March 17, 1982.

Christopher M. Royston, Cohn & Birnbaum, Hartford, Conn., for plaintiff.

Dennis L. Pieragostini, Asst. Corp. Counsel, Hartford, Conn., for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

CLARIE, Chief Judge.

The defendants have moved to dismiss this action, pursuant to Fed.R.Civ.P. 12(b), arguing that the plaintiff lacks standing to challenge their decision to restrict vehicular traffic on Stone and Brookfield Streets in the City of Hartford. The plaintiff Balf Company claims that the defendants, who include several state and municipal officials,

---

**4.** Cf. fn. 1, *supra.* Other lawsuits have, in addition, been brought against other distributors of similar puzzles.

violated the Federal Aid-Highways Act, 23 U.S.C. § 101 *et seq.* ("FAHA"), when implementing this traffic control policy and under the principles enunciated by the Supreme Court in *Maine v. Thiboutot*,[1] it has the right to challenge the defendants' procedural violations of federal law.

The Court finds that the plaintiff has standing to bring this action because it has been deprived of a right secured by the laws of the United States, namely, the right to require any State that accepts federal highway funds to comply with FAHA regulations, before selectively barring access to a federally financed roadway. Thus, the defendants' motion to dismiss these federal claims is denied, but its request to dismiss the pendent state law claims is granted; the Court finds that the latter claims could be more appropriately decided by a state court interpreting its own state laws.

### Facts

The plaintiff Balf Company is a Connecticut corporation engaged in the manufacture and sale of concrete mix, crushed stone and gravel aggregate and has its principal place of business in Newington, Connecticut. As a part of its regular business operations, the plaintiff transports goods in interstate commerce and its trucks traditionally have travelled over Stone Street and Brookfield Street from its plant site, because this route is the most direct and efficient way of reaching I–84, a major Connecticut interstate highway.

In 1975, the Connecticut State Traffic Commission, in cooperation with, and at the behest of, the City of Hartford, issued a directive prohibiting "thru truck traffic" on Stone and Brookfield Streets. This regulation finally became effective on March 17, 1981 after a series of legal battles, culminating in a Connecticut Supreme Court decision in *Maloney v. Pac*,[2] which unsuccessfully challenged the validity of this traffic control measure. As a result of this deci-

sion, the plaintiff is precluded from using Stone and Brookfield Streets as an access route to I–84.

The Balf Company commenced this federal court action in July of 1980, arguing that the defendants failed to comply with the FAHA when adopting this traffic control measure and further alleging that under 42 U.S.C. § 1983, the FAHA, and the United States Supreme Court's decision in *Maine v. Thiboutot*, the defendants could be required by a private plaintiff to satisfy federal statutory regulations before implementing this local traffic restriction.

The long history of both state and federal governmental involvement in the development of the Stone and Brookfield Street corridor is important for purposes of this litigation. In the early 1970's, this route was targeted by the responsible state and federal officials as an "urban system route" to provide easy and efficient access to I–84. Substantial improvements, financed primarily through FAHA funds, were made to facilitate smooth traffic flow on these roads.[3] Although originally supporting this plan to develop an "urban system route" along Stone and Brookfield Streets, state and municipal officials later revised their position in light of increasing public concern over the substantial levels of noise caused by traffic (especially trucks) on this route and the likelihood that these roads would suffer costly damages due to overuse. To alleviate the noise and damage problems, the municipal defendants in 1976 imposed a weight limit for those trucks travelling on Stone and Brookfield Streets and, when this limitation proved unsuccessful in allaying citizen concerns, these defendants in 1980 erected a berm at the intersection of Stone, Brookfield and Dart Streets which effectively closed this route to interstate truck traffic.

Balf does not challenge the inherent authority and right of the defendants to make

---

1. 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

2. —— Conn. ——, ——, 439 A.2d 349, 42 Conn. L.J. No. 38, pp. 2, 4 (1981).

3. *See* Affidavit of Edward Gilligan for a listing of the precise improvements, and federal monies expended, on this route.

decisions, consistent with the public welfare, which restrict or otherwise control traffic patterns. However, the company does claim that when a state or municipal corporation accepts federal funds through the FAHA to finance a particular roadway project, that entity must thereafter comply with federal law and FAHA regulations before substantially restricting interstate commerce over that highway. In this motion, the defendants neither concede nor challenge the merits of these allegations, but rather argue that the plaintiff has no standing to raise such claims.

### Discussion

The Court is asked in this motion to consider the precise scope of the Supreme Court's decision in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In *Thiboutot*, the plaintiffs claimed that they were denied additional welfare benefits by the defendant State of Maine even though the defendant legally was obligated to provide these benefits under the federal Social Security Act, 42 U.S.C. § 602(a)(7). 448 U.S. at 3, 100 S.Ct. at 2503. The defendant argued, and prevailed through the Maine Supreme Judicial Court, that the plaintiffs were not entitled to these benefits and further that the plaintiffs did not have standing under 42 U.S.C. § 1983 or the Social Security Act to challenge alleged state violations of federal statutory laws. The Supreme Court granted *certiorari, inter alia*, on the issue of the limitations on a private plaintiff's ability to bring § 1983 actions where a state arguably has violated federal statutory law in the administration of any state-federal cooperative program.

Justice Brennan's majority opinion in *Thiboutot* simply and unequivocally resolved the issue of whether a private plaintiff who is injured by state action which allegedly conflicts with federal statutory law can sue under § 1983 to challenge those state acts:

"Section 1983 provides:

'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territo-ry, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution *and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.' (Emphasis added).

The question before us is whether the phrase 'and laws,' as used in § 1983, means what it says, or whether it should be limited to some subset of laws. Given that Congress attached no modifiers to the phrase, the plain language of the statute undoubtedly embraces respondents' claim that petitioners violated the Social Security Act." *Id.* at 4, 100 S.Ct. at 2503–04.

Justice Powell's dissent in *Thiboutot* aptly summarized the legal implications of the majority opinion:

"In practical effect, today's decision means that state and local governments, officers, and employees may now face liability whenever a person believes he has been injured by the administration of any federal-state cooperative program, whether or not that program is related to equal or civil rights." *Id.* at 22, 100 S.Ct. at 2513.

The courts that have considered this issue in the wake of the *Thiboutot* opinion have reached different conclusions despite the ostensibly clear holding in that decision. For example, in *First National Bank of Omaha v. Marquette National, etc.*, 636 F.2d 195 (8th Cir. 1980), the defendant claimed that the plaintiff lacked standing to challenge actions undertaken by the defendant state agency which allegedly conflicted with federal banking regulations, specifically 12 U.S.C. § 85. Upon reviewing the Court's decision in *Thiboutot*, the *Marquette* Court concluded that the plaintiff, a private individual, was not entitled to challenge alleged state violations of the federal banking laws under either § 1983 or the Federal Banking Act:

"This language [*Thiboutot*] suggests that section 1983 actions should be broadly permitted, even in areas outside welfare, First Amendment, and social security cases. However, the Court fails to say this explicitly. In light of the narrow holding in the case concerning social security cases, the general language in the opinion, and the major ramifications of such a holding, we do not think that such an expansion of section 1983 is justified." *Id.* at 198, n.2.

The Court in *Yapalater v. Bates*, 494 F.Supp. 1349 (S.D.N.Y.1980) considered the *Thiboutot* opinion in a different and broader light. In *Yapalater*, the plaintiff, a licensed psychiatrist, sought to recover Medicaid payments for the professional services that he had rendered. The state defendants refused to compensate him for these services even though under regulations of the Federal Department of Health and Human Services he arguably was entitled to such payments. At trial, the defendants argued that the plaintiff could not cite any statutory authority which would permit him to raise violations of the Social Security Act. In an effort to distinguish *Thiboutot*, the defendants asserted that the plaintiff was a provider, not a recipient, of welfare services and, under a *Cort v. Ash* analysis, the Social Security Act was not adopted for his "especial benefit." *Id.* at 1357. They therefore claimed that the plaintiff should not be permitted to raise alleged violations of that Act.

Upon considering the *Thiboutot* decision and finding that the plaintiff was entitled to sue under the Social Security Act, the *Yapalater* Court stated:

"Had Mr. Justice Powell's analysis constituted the majority opinion in *Thiboutot*, then the existence *vel non* of a private cause of action on plaintiff's behalf may well have turned on the analysis in *Cort v. Ash* and its progeny: a more

doubtful proposition from the plaintiff's point of view. However, the precise effect of *Thiboutot* is to create a remedy where (as the present plaintiff alleges) injury flows from a state's violation of governing federal law in a joint federal-state cooperative program." *Id.* at 1358.

In light of the unambiguous language in *Thiboutot* and *Yapalater*, the Court will not impose artificial or arbitrary limitations on the ability of a private plaintiff to raise violations of federal law, where state action allegedly conflicts with that law and the private party is injured thereby. The clear import of *Thiboutot* is that "any deprivation" of a "right" secured by the "laws of the United States" can be vindicated by a private plaintiff in federal court even if the statute which confers that "right" was not adopted for the "special benefit" of the plaintiff.

The defendants, conceding for purposes of argument that § 1983 does protect private plaintiffs from any deprivation of a right secured by the laws of the United States, nonetheless argue that § 1983 is not a jurisdictional statute and therefore the plaintiff must find an independent jurisdictional base in another statute before it can bring this action. They claim that neither the FAHA nor any other statute provides an appropriate jurisdictional base for the plaintiff. The defendants' initial argument is well taken because the jurisdictional counterpart of § 1983, 28 U.S.C. § 1343, does not create any jurisdictional base for a private plaintiff, unless that party seeks to challenge equal or civil rights violations.[4]

Thus, even though § 1983 may provide a *remedy* if the conduct of the defendants in this action is found to violate the FAHA, the Court cannot entertain suits by a private plaintiff, unless that party can point to some federal statute which confers a federally protected "right" on that party:

---

4. 28 U.S.C. § 1343(3) provides that the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regu-

lation, custom or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

"[i]t is clear that § 1983 is a purely remedial statute—it provides no substantive rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18 [99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508] (1979). Thus, before one can enjoy a right of action under § 1983, one must establish the violation of a federally protected right independent of § 1983. In order to have an action under § 1983, it is not enough to establish the violation of a federal statute. Rather, the statute violated must be one that confers a federal right." *Meyerson v. State of Arizona*, 507 F.Supp. 859, 864 (D.Ariz.1981).

The reason for this distinction is quite logical, because a party cannot be deprived of a "right" under § 1983, until that party satisfies the threshold burden of showing that there is a federally protected statutory "right" to which the party is entitled.

In this action, any federally protected "right" that the plaintiff possesses, if such right exists, must flow from the FAHA because this is the only statute which the plaintiff alleges has been violated by the defendants. The defendants, citing *Cort v. Ash* and the other implied private right of action cases, argue that the FAHA confers no rights on the plaintiff, because this statute was not adopted for the "especial benefit" of the Balf Company. This contention raises a fundamentally troubling question here, requiring the Court to reconcile the Supreme Court's decision in *Thiboutot* with *Cort v. Ash* and the other private right of action cases. Specifically, the Court is asked to decide whether a private plaintiff in a § 1983 action must establish independent statutory rights and a corresponding implied right to sue under that statute before such party can bring a § 1983 action, or alternatively whether some lesser standard to confer standing is mandated after *Maine v. Thiboutot*.

In *Cort v. Ash*, the Court was asked to consider whether a right of action under the Federal Election Campaign Act could be implied in favor of private plaintiffs to challenge violations of that statute. 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The *Ash* Court suggested that when a federal statute does not provide explicitly for a private right of action, four factors should be considered when analyzing whether a private cause of action could be implied under that particular statute. *Id.* at 82, 95 S.Ct. at 2089–90.[5] Court decisions subsequent to *Ash* have indicated that the most important factor in this private right of action analysis is whether Congress intended that the statute in question be adopted for the "especial benefit" of the complaining party. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Leary v. Crapsey*, 566 F.2d 863 (2d Cir. 1977).

The defendants contend that *Cort v. Ash* and the private cause of action cases provide the appropriate legal framework for determining when a private party has a "right" under a particular federal statute. This argument logically cannot be supported, however, because if the plaintiff satisfied the *Cort v. Ash* implied right of action legal standard here, then it could sue under the FAHA irrespective of § 1983 and *Thiboutot*. Conversely, if the plaintiff was unable to prove that the FAHA was adopted for its especial benefit, then presumably that plaintiff would be barred from suing the state defendants, even if the acts of those defendants violated federal law and seriously injured the plaintiff. *Thiboutot* and § 1983 thus would be rendered *sui generis* in these type of cases, a result that the *Thiboutot* Court by its language clearly did not contemplate.

In light of this analysis, the Court finds that a private plaintiff in a § 1983 action

---

**5.** These four factors include:
(a) Whether the plaintiff is one of the class for whose especial benefit the statute was enacted;
(b) Whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;

(c) Whether it would be consistent with the underlying purposes of the legislative scheme to imply such a remedy; and
(d) Whether the cause of action is one traditionally relegated to state law.

need not establish that it has an implied right to sue under a separate federal statute, but rather must demonstrate that it has suffered an injury by the administration of a joint federal-state cooperative program and was an *intended beneficiary* of that program. *See CETA Worker's Action Com. v. City of New York,* 509 F.Supp. 902 (S.D.N.Y.1981) (*"Thiboutot* extended the reach of § 1983 to claims of injury by the administration of any federal-state cooperative program, whether or not related to equal or civil rights, unless the governing statute provides an exclusive remedy for violations of its terms." *Id.* at 909); *See also Middlesex Cty. Sewer Authority v. Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).[6]

The FAHA, even though arguably not adopted for the "especial benefit" of the plaintiff, clearly was intended, through the expenditure of federal monies to improve road conditions on interstate routes, to benefit those persons who travel extensively in interstate commerce:

"It is hereby declared to be in the national interest to accelerate the construction of Federal-aid highway systems, including the National System of Interstate and Defense Highways, since many of such highways or portions thereof, are in fact inadequate to meet the needs of local and interstate commerce. . . ." 23 U.S.C. § 101(b).

The intent of Congress to benefit interstate commerce through the expenditure of FAHA monies is further supported by the legislative history of that Act:[7]

"In the interim, transportation problems in 'metropolitan' areas grow more acute. The expansion of the federal aid highways system in metropolitan areas to include the most heavily-traveled elements of the urban highways network is fundamental to any increased federal effort in the improvement of urban transportation. There are routes and corridors where investment in highways can make the most significant contribution toward greater mobility by facilitating both automobile and bus travel."

The plaintiff's ability to transport goods in interstate commerce has been significantly affected by the defendants' decision to eliminate "thru truck traffic" on Stone and Brookfield Streets.[8] The FAHA requires that state and municipal officials comply with FAHA regulations before making any change in control of access to federally financed roadways. 23 C.F.R. § 620.203(a).[9]

The plaintiff alleges here that the defendants did not comply with FAHA requirements before implementing their traffic control policy. The Balf Company thus may have been deprived of a "right" secured by the laws of the United States, namely, the right to require a State to comply with FAHA regulations before limiting interstate access to traffic routes,

---

**6.** In *Sea Clammers,* the Court cited two exceptions to the application of § 1983 where statutory violations of federal law were alleged:

(a) Where the statute specifically precludes private enforcement; or

(b) Where the statute does not create "rights" enforceable by private parties under § 1983.

These two exceptions do not apply to this action because the FAHA does not provide, explicitly or implicitly, any bar to private enforcement of FAHA violations and further because this statute does create rights enforceable by private parties under § 1983. *See* discussion *infra* at 603.

**7.** *See* Report of Conference Committee, P.L. 91–605, 1970 U.S.Code Cong. and Admin.News, 5392, 5401; *see also* House Rep.No.93–118, 1973 U.S.Code Cong. and Admin.News, 1859.

**8.** Although the precise financial impact of this traffic restriction on the plaintiff's business is difficult to qualify, the plaintiff's added transportation costs, both in terms of employee time and increased energy costs, are substantial. *See* Plaintiff's Complaint at 6.

**9.** This provision requires that:

"(a) After final acceptance of a project on the federal-aid primary, urban, or secondary system or after the date that the plans, specifications and estimates (PS&E) for the physical construction on the right-of-way for a federal-aid interstate project have been approved by the FHWA, relinquishment of the right-of-way, or any change made in control of access shall be in accordance with the provisions of this section."

which were financed primarily through FAHA monies. The plaintiff therefore will have standing to challenge the defendants' alleged violations of the FAHA regulations in federal court. The defendants' motion to dismiss for lack of standing to bring this suit, is denied. The defendants' motion to dismiss the plaintiff's state law claims, however, is granted, because these claims are more appropriately brought in state court and would burden this litigation unnecessarily without adding anything of substance to the plaintiff's case.

SO ORDERED.