**ALLANDALE NEIGHBORHOOD ASSOCIATION, et al.,**
Plaintiffs-Appellants,

v.

**AUSTIN TRANSPORTATION STUDY POLICY ADVISORY COMMITTEE,**
Defendant-Appellee.

No. 87–1396.

United States Court of Appeals,
Fifth Circuit.

March 22, 1988.

Philip Durst, Richards & Durst, David Frederick, Austin, Tex., for plaintiffs-appellants.

William T. Palmer, Asst. Atty. Gen., James W. Collins, Co. Atty., Austin, Tex., for defendant-appellee.

Before BROWN, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiffs contend that the defendant Austin Transportation Study Policy Advisory Committee of Austin, Texas, a planning group at the local level, violated federal statutes codified at 23 U.S.C. § 134 and 49 U.S.C. § 1607 chiefly by failing to give due consideration to social, economic, and environmental goals when the Committee devised and endorsed an overarching transportation plan. The Committee challenges Plaintiffs' right of action. After considering issues of standing and ripeness, we reject Plaintiffs' contention that these sections supply an implied private right of action under the instant circumstances and affirm the district court's judgment dismissing Plaintiffs' complaint.

## I. Facts and Procedural History

### A. The Parties

Six plaintiffs bring this action. First, the Allandale Neighborhood Association is allegedly a corporation comprising as members both individuals and businesses in the Allandale neighborhood of Austin, Texas. Second, the Koenig Lane Business Association allegedly has as members the owners and employees of small businesses in the area of Koenig Lane in Austin. Third, the Save Barton Creek Association is alleged to be a corporation active in the preservation of water quality in the Austin area. Fourth, the Sierra Club is alleged to be a corporation active in the preservation of the natural environment with members in the Austin area. Fifth, the Texas Association for Public Transportation is alleged to be a corporation that conducts research and educational activities concerning public transportation in Austin. The sixth and final Plaintiff, the Tonkawa Springs Home-

owners Association, is not a party to this appeal.

The sole defendant is the Austin Transportation Study Policy Advisory Committee (Committee). The Committee is alleged to be a metropolitan planning organization called into being by the Governor of Texas. The Committee is allegedly charged with developing a transportation plan for an area covering parts, including Austin, of four Texas counties.

### B. *Plaintiffs' Claims*

Plaintiffs allege that, in March 1986, the Committee formally endorsed a new Transportation Plan for the Austin Metropolitan Area (Austin Transportation Plan). According to Plaintiffs, the Committee's process for developing the Austin Transportation Plan was deficient in two respects. First, the process allegedly was not cooperative and comprehensive; was not formulated on the basis of transportation needs; and most important, did not give due consideration to comprehensive long-range land use plans, to development objectives, to the Plan's probable effect upon the future development of the Austin urban area, and to overall social, economic, environmental, system performance, and energy conservation goals and objectives. Second, some of the Committee members allegedly showed prejudgment and substantial bias. Plaintiffs assert that these allegations of fact show violations of the federal statutes codified at 23 U.S.C. § 134 and 49 U.S.C. § 1607 and, further, that these allegations state a claim or claims for relief under these statutes. Finally, Plaintiffs seek a judgment declaring the Austin Transportation Plan in violation of these statutes and enjoining the Committee to refrain from endorsing programs or projects inconsistent with the transportation plan that preceded the Austin Transportation Plan of March 1986.

### C. *The District Court*

The Committee moved the district court to dismiss Plaintiffs' complaint and, alternatively, for summary judgment. The Committee tended to state these alternative grounds in support of its motion: (1) Plaintiffs lack standing; (2) their claim or claims are not ripe; (3) Plaintiffs have no right of action to assert their claims; and (4) even if they do have a right of action then, on the merits of their claims, Plaintiffs' factual allegations show no violation of 23 U.S.C. § 134 and 49 U.S.C. § 1607.

The district court granted the Committee's motion to dismiss, ruling that Plaintiffs have no right of action and, further, that Plaintiffs lack standing and that their claim or claims are not ripe. Five of the six Plaintiffs appeal. For the reasons assigned below, we affirm the dismissal.

### II. *Discussion*

This appeal potentially presents for decision a familiar cluster of preliminary issues: standing, in both its constitutional dimension and its prudential or subconstitutional dimension; ripeness, likewise in both its constitutional and its prudential or subconstitutional dimensions; and the right of action issue. We endeavor, not only to decide the issues as necessary, but to establish a principled sequence for decision-making.

For reasons given below, we decide first the issue or issues of standing and ripeness in their constitutional dimensions. Having determined constitutional standing and constitutional ripeness, we next decide the right of action issue. Finally, determining the right of action issue against Plaintiffs, we need not reach any remaining issue of subconstitutional standing or subconstitutional ripeness.

### A. *Constitutional Standing and Constitutional Ripeness*

#### 1.

Constitutional standing, sometimes called Article III standing, is said to form "part" of "the constitutional limitation of federal-court *jurisdiction* to actual cases or controversies." [1] Similarly, to "the extent that

---

**1.** *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) (emphasis supplied); *see also Hodel v. Irving,* —— U.S. ——, 107 S.Ct. 2076, 2080, 95

'issues of ripeness involve, at least in part, the existence of a live "Case or Controversy," ' " [2] ripeness too presents a jurisdictional question.[3]

On the other hand, the subconstitutional standing [4] and right of action issues are facets of the same inquiry "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." [5] In other words, they ask whether, assuming the claim on the merits is valid, this plaintiff has a right to assert the claim in court. Similarly, the subconstitutional ripeness issue asks whether the plaintiff has a right to assert the claim now or only later.[6] These issues do "not [present] a question of jurisdiction." [7]

We turn then first to the jurisdictional issues of constitutional standing and constitutional ripeness. The Supreme Court has stated that circumstances satisfying the constitutional standing requirement also "would appear to satisfy [the ripeness] requirement" to the extent the ripeness requirement derives from the constitutional requirement of a case or controversy.[8]

Accordingly, we may turn then to the requirement of constitutional standing. In order to have constitutional standing, a "plaintiff must allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be

---

L.Ed.2d 668 (1987); *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *United States v. One 18th Century Colombian Monstrance,* 797 F.2d 1370, 1374 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987); *In re Weaver,* 632 F.2d 461, 462 n. 6 (5th Cir.1980).

2. *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 82, 98 S.Ct. 2620, 2634–35, 57 L.Ed.2d 595 (1978) (quoting *Blanchette v. Connecticut Gen. Ins. Corps.,* 419 U.S. 102, 138, 95 S.Ct. 335, 356, 42 L.Ed.2d 320 (1974)); *see Thomas v. Union Carbide Agricultural Prods. Co.,* 473 U.S. 568, 578, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985); *compare Buckley v. Valeo,* 424 U.S. 1, 113–18, 96 S.Ct. 612, 680–82, 46 L.Ed.2d 659 (1976) (tending to treat ripeness as a wholly subconstitutional doctrine).

3. *Johnson v. Sikes,* 730 F.2d 644, 647 (11th Cir. 1984); *Ecee, Inc. v. FERC,* 611 F.2d 554, 556 (5th Cir.1980); *International Tape Mfrs. Ass'n v. Gerstein,* 494 F.2d 25, 27 (5th Cir.1974).

4. The subconstitutional standing limitations prominently include those governing third-party standing, *see, e.g., Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953); zone of interest, *see, e.g., Clarke v. Securities Indus. Ass'n,* — U.S. —, — n. 5, — n. 16, 107 S.Ct. 750, 754 n. 5, 758 n. 16, 93 L.Ed.2d 757 (1987); generalized grievances, *see, e.g., Duke Power Co.,* 438 U.S. at 80, 98 S.Ct. at 2634; taxpayer standing, *see, e.g., United States v. Richardson,* 418 U.S. 166, 196 & n. 18, 94 S.Ct. 2940, 2956 & n. 18, 41 L.Ed.2d 678 (1974) (Powell, J., concurring); representational standing, *see, e.g., International Union v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 2528–33, 91 L.Ed.2d 228 (1986); and challenges to statutes unconstitutional as applied to another, *see, e.g., Eisenstadt v. Baird,* 405 U.S. 438, 444, 92 S.Ct. 1029, 1033, 31 L.Ed.2d 349 (1972).

5. *Warth v. Seldin,* 422 U.S. 490, 500 & n. 12, 95 S.Ct. 2197, 2206 & n. 12, 45 L.Ed.2d 343 (1975). The subconstitutional standing rules are limitations thought to be implied in the right of action unless the lawmaker intends otherwise. *See Bread Political Action Comm. v. Federal Election Comm.,* 455 U.S. 577, 584, 102 S.Ct. 1235, 1239–40, 71 L.Ed.2d 432 (1982); *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972); *Korioth v. Briscoe,* 523 F.2d 1271, 1274 n. 5 (5th Cir.1975).

6. *E.g., Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 940 (D.C.Cir.1986).

7. *Burks v. Lasker,* 441 U.S. 471, 476 & n. 5, 99 S.Ct. 1831, 1836 & n. 5, 60 L.Ed.2d 404 (1979); *see Gladstone, Realtors,* 441 U.S. at 109 n. 21, 99 S.Ct. at 1612 n. 21; *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 398, 99 S.Ct. 1171, 1175–76, 59 L.Ed.2d 401 (1979); *Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 283–84, 98 S.Ct. 2733, 2744–45, 57 L.Ed.2d 750 (1978); *Duke Power Co.,* 438 U.S. at 71–72, 98 S.Ct. at 2629; *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278–79, 97 S.Ct. 568, 571–72, 50 L.Ed.2d 471 (1977); *Craig v. Boren,* 429 U.S. 190, 192–94, 97 S.Ct. 451, 454–55, 50 L.Ed.2d 397 (1976); *Lau v. Nichols,* 414 U.S. 563, 571 n. 2, 94 S.Ct. 786, 790 n. 2, 39 L.Ed.2d 1 (1974); *Chipser v. Kohlmeyer & Co.,* 600 F.2d 1061, 1067 (5th Cir.1979).

8. *Duke Power Co.,* 438 U.S. at 81, 98 S.Ct. at 2634–35; *see also Bob's Home Serv., Inc. v. Warren County,* 755 F.2d 625, 627 (8th Cir.1985); *Ecee, Inc.,* 611 F.2d at 559 n. 9; *Cities Serv. Co. v. Department of Energy,* 520 F.Supp. 1132, 1138 (D.Del.1981).

redressed by the requested relief."[9]   In other words, the plaintiff must allege injury, causation, and redressability.

### 2.

Plaintiffs in the present case allege that the Austin Transportation Plan foresees the conversion of Koenig Lane in Austin into a six-lane highway.   Plaintiffs make two sets of allegations (a. & b.) concerning this planned highway in order to show constitutional standing.

### a.

■   First, the two Plaintiffs Allandale Neighborhood Association and Koenig Lane Business Association allege that the mere existence of the Austin Transportation Plan with its provision for the highway at issue has already depressed the market values of properties[10] owned by members[11] of these Plaintiffs.   The causation and redressability elements would seem to be satisfied.   The Committee's assertedly unlawful procedures produced the Austin Transportation Plan and its provision for the highway.   The existence of the provision for the highway has caused the market to reassess at a lower level the values of properties in neighborhoods through which the planned highway will pass. Moreover, Plaintiffs' requested relief, by disrupting the Austin Transportation Plan (and its provision for the highway) and by restraining the Committee from acting upon the Plan, would cause the market once again to reassess property values and this time to place them at their former higher levels.   Remaining is the question whether these Plaintiffs have alleged a sufficient *injury.*

We accept the allegation of presently depressed property value as a sufficient injury for the purposes of constitutional standing.   As a "pocketbook" injury, it is akin to the "direct dollars-and-cents injur[ies]" routinely accepted as sufficient for constitutional standing purposes.[12]   To be sure, such a loss remains in one sense unrealized until the property is sold. Nevertheless, a market devaluation has present adverse consequences short of realization through sale.   The knowledge that sale of the property may bring in fewer proceeds will influence and restrict the willingness to sell.   Further, a market devaluation will lessen the property owner's eligi-

**9.**   *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984);   *see also Virginia v. American Booksellers Ass'n,* , — U.S. —, —, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 803, 105 S.Ct. 2965, 2971, 86 L.Ed.2d 628 (1985); *Heckler v. Mathews,* 465 U.S. 728, 738, 104 S.Ct. 1387, 1394, 79 L.Ed.2d 646 (1984).

**10.**   Before the district court, the Committee tended to allege (1) that the values of the properties of these two Plaintiffs' members had not become depressed and (2) that, even if they had become depressed, other factors besides the existence of the Austin Transportation Plan had caused the devaluation.   The Committee did not, however, offer (and the district court did not take) evidence to resolve the conflicting allegations.   *Compare Duke Power Co.,* 438 U.S. at 67–68, 72, 98 S.Ct. at 2627, 2630.   Consequently, we must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."   *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206.

**11.**   These two Plaintiffs are organizations.   The injuries these Plaintiffs allege here for constitutional standing purposes are not injuries to these Plaintiffs as organizations, but rather injuries to their members, *e.g.,* homeowners living in the neighborhoods through which the planned highway will pass.   Thus, at least implicitly, Plaintiffs assert representational standing, that is, standing to represent the interests of their members.   *See generally Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 341–45, 97 S.Ct. 2434, 2440–42, 53 L.Ed.2d 383 (1977).

The inquiry at this step in the sequence of our decisionmaking is still focussed on constitutional standing.   We therefore assume that Plaintiffs have the subconstitutional representational standing they assert.   Consequently, in their attempts to satisfy the constitutional standing requirement, Plaintiffs may allege injuries personal, not to themselves as organizations, but rather to the members they are assumed to represent.   *Brock,* 106 S.Ct. at 2528; *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211–12; *Rite—Research Improves the Env't, Inc. v. Costle,* 650 F.2d 1312, 1319 (5th Cir.1981).

**12.**   *Doremus v. Board of Educ.,* 342 U.S. 429, 434, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952); *see also O'Hair v. White,* 675 F.2d 680, 687 (5th Cir.1982) (en banc).

bility for loans secured by the property. Finally, we acknowledge that other courts have accepted depressed property value as a sufficient injury for constitutional standing purposes.[13]

We conclude therefore that these two Plaintiffs have satisfied the constitutional standing requirement (and, with it, any constitutional ripeness requirement [14]).

#### b.

Second, all five Plaintiffs on appeal allege to varying degrees that the construction and operation of the six-lane highway will have deleterious social, economic, and environmental effects upon their members. Since two of the Plaintiffs have constitutional standing under the first set of allegations already considered, we need not consider [15] whether this second set of allegations also supports constitutional standing.[16]

#### B. *Right of Action, Subconstitutional Standing, and Subconstitutional Ripeness*

#### 1.

Two issues remain for decision: (1) whether Plaintiffs Allandale Neighborhood Association and Koenig Lane Business Association have a right of action (and whether any subconstitutional standing limitation applies) and (2) whether these Plaintiffs' claim or claims are ripe in a subconstitutional sense.

Ripeness, as noted, governs whether the litigant has a right to assert the claim now or only later. In making that ripeness

---

**13.** *Alschuler v. Department of Housing and Urban Dev.,* 686 F.2d 472, 476–77 (7th Cir.1982) (allegation that "property values ... will be adversely affected" "sufficient to confer Article III standing" (footnote omitted)); *Foster v. Center Township,* 798 F.2d 237, 243 n. 10 (7th Cir.1986) (reaffirming *Alschuler* ); *Coalition of Concerned Citizens Against I–670 v. Damian,* 608 F.Supp. 110, 121 (S.D.Ohio 1984); *Citizens Comm. Against Interstate Route 675 v. Lewis,* 542 F.Supp. 496, 521, 523, 525 (S.D.Ohio 1982); *cf. Friedman v. Harold,* 638 F.2d 262, 265 (1st Cir. 1981) ("Economic injury, even of an indirect nature, will establish sufficient concrete adverseness to meet the Article III 'case or controversy' " requirement).

**14.** *See supra* note 8 and accompanying text.

**15.** *See Watt v. Energy Action Educ. Found.,* 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981); *Gladstone, Realtors,* 441 U.S. at 111, 112 & n. 25, 99 S.Ct. at 1614 & n. 25; *Carey v. Population Servs. Int'l,* 431 U.S. 678, 682, 97 S.Ct. 2010, 2014, 52 L.Ed.2d 675 (1977); *Whalen v. Roe,* 429 U.S. 589, 595 n. 14, 97 S.Ct. 869, 874 n. 14, 51 L.Ed.2d 64 (1977); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 562 n. 9, 50 L.Ed.2d 450 (1977); *Planned Parenthood of Cent. Mo. v. Danforth,* 428 U.S. 52, 62 n. 2, 96 S.Ct. 2831, 2838 n. 2, 49 L.Ed.2d 788 (1976); *Buckley,* 424 U.S. at 12, 96 S.Ct. at 631; *Doe v. Bolton,* 410 U.S. 179, 189, 93 S.Ct. 739, 746, 35 L.Ed.2d 201 (1973); *Baggett v. Bullitt,* 377 U.S. 360, 366 n. 5, 84 S.Ct. 1316, 1320 n. 5, 12 L.Ed.2d 377 (1964); *cf. Duke Power Co.,* 438 U.S. at 73, 98 S.Ct. at 2630.
 Thus, we do not reach the constitutional standing of Plaintiffs Save Barton Creek Association, Sierra Club, and Texas Association for Public Transportation. If these three other Plaintiffs presented issues different from those presented by the two remaining Plaintiffs whose constitutional standing has been upheld, we would seemingly be compelled to reach the constitutional standing question in order to be able to reach these different issues. *See Whalen,* 429 U.S. at 595 n. 14, 97 S.Ct. at 874 n. 14. But the three other Plaintiffs do not present different issues. Similarly, if the two remaining Plaintiffs had success on the appeal, we would seemingly be compelled to reach the constitutional standing question in order to be able to decide whether the three other Plaintiffs would be entitled to share in that success. But the appeal of the two remaining Plaintiffs is ultimately unsuccessful.

**16.** The injury (depressed property values) supporting constitutional standing and therefore our Article III jurisdiction may or may not have a weak or incomplete so-called nexus with the statutory provision forming the basis of Plaintiffs' claims on the merits, that is principally, the asserted duty to give due consideration to social, economic, and environmental goals. In other words, this asserted duty may or may not be intended to protect against or regulate depressed property values. Because the constitutional standing inquiry is independent of a plaintiff's claim on the merits, *Warth,* 422 U.S. at 500, 95 S.Ct. at 2206, no such nexus is required for constitutional standing, *Duke Power Co.,* 438 U.S. at 78–79, 98 S.Ct. at 2633–34. Of course, a defendant may object to a lack of nexus as a matter of subconstitutional standing. *Supra* note 4.

determination, the court must "evaluate both the fitness of the *issues* for judicial decision and the hardship to the parties of withholding court consideration." [17] In the present case, the issues whose fitness for judicial decision is implicated by the ripeness inquiry concern, not Plaintiffs' asserted right of action, but rather their assertions on the merits of their claim or claims.[18] We turn then first to the right of action issue.

**17.** *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) (emphasis supplied); *see also Thomas*, 105 S.Ct. at 3332–33; *Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 200–03, 103 S.Ct. 1713, 1720–22, 75 L.Ed.2d 752 (1983); *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586–87 (5th Cir.1987).

**18.** On the merits, Plaintiffs allege in essence that the Committee failed to give due consideration to certain factors when developing the Austin Transportation Plan. Plaintiffs assert that these allegations show violations of 23 U.S.C. § 134 and 49 U.S.C. § 1607.

Yet, the duty of due consideration created by these statutory sections is more clearly imposed upon the Secretary of Transportation, not the Committee. Thus, Plaintiffs must argue that the entire administrative process is better served by finding in these sections an implicit duty of due consideration binding upon the Committee. Alternatively, the Plaintiffs must argue that the Secretary has through regulations at least implicitly delegated his or her statutory duty of due consideration to the Committee. *Cf. La Raza Unida v. Volpe*, 488 F.2d 559, 561–63 (9th Cir.1973), *cert. denied*, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1138 (1974); *Named Individual Members of the San Antonio Conservation Soc'y v. Texas Highway Dep't*, 446 F.2d 1013, 1027–28 (5th Cir.1971), *cert. denied*, 406 U.S. 933, 92 S.Ct. 1775, 32 L.Ed.2d 136 (1972); *La Raza Unida v. Volpe*, 337 F.Supp. 221, 225–32 (N.D.Cal.1971), *cert. denied*, 409 U.S. 890, 93 S.Ct. 105, 34 L.Ed.2d 147 (1972), *and aff'd*, 488 F.2d 559 (9th Cir.1973), *cert. denied*, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1138 (1974). The ripeness inquiry would ask whether this administrative process should be allowed to proceed closer to its natural termination before the courts intervene to spell out the nature of the Committee's implicit duties, if any.

More important, even if the Committee has a duty of due consideration, ripeness concerns persist. The ripeness inquiry would ask whether the Committee's fulfillment of that duty is fit for judicial review now as Plaintiffs contend, that is, as soon as the Committee has endorsed its transportation plan, or later once other actors in the administrative process, for instance, state officials (*see, e.g.*, 23 C.F.R. §§ 450.-

**2.**

Plaintiffs do not suggest or rely upon any statute that "explicitly create[s] a private enforcement mechanism" to enforce the Committee's asserted duties under 23 U.S.C. § 134 and 49 U.S.C. § 1607; [19] thus, the question "is whether such a private right of action can be implied" for these Plaintiffs.[20]

114(c), .206(a)) or federal officials (*see, e.g., id.* §§ 450.212(a)-(c)), have had an opportunity to pass upon the Committee's fulfillment of its duties. For a description of this process, see generally *City of Evanston v. Regional Transp. Auth.*, 825 F.2d 1121, 1123–24 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); *Rapid Transit Advocates, Inc. v. Southern Cal. Rapid Transit Dist.*, 752 F.2d 373, 375–78 (9th Cir.1985); *Atlanta Coalition on the Transp. Crisis, Inc. v. Atlanta Regional Comm'n*, 599 F.2d 1333, 1337–40 (5th Cir.1979); *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 434 n. 5 (5th Cir. Unit B 1981); *City of Atlanta v. Metropolitan Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1093–94 (5th Cir. Unit B 1981). This aspect of the ripeness inquiry in the present case might also implicate the special considerations of the doctrine of primary jurisdiction. *See generally Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201–02 (5th Cir. 1988).

**19.** There is apparently some dispute about the nature of the Committee.

If the Committee is a state body, Plaintiffs might arguably have an express private right of action in 42 U.S.C. § 1983. *See Cohen v. Massachusetts Bay Transp. Auth.*, 647 F.2d 209, 212 n. 3 (1st Cir.1981); *Balf Co. v. Gaitor*, 534 F.Supp. 600 (D.Conn.1982); *see generally Victorian v. Miller*, 813 F.2d 718 (5th Cir.1987) (en banc). Plaintiffs have made no such contention, however. In exercise of our discretion, *Baker v. Bell*, 630 F.2d 1046, 1056 (5th Cir.1980), we do not reach this issue on our own motion especially for the reason that even the preliminary applicability of 42 U.S.C. § 1983 is unclear in light of the disputed nature of the Committee. *Compare Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981).

If the Committee is a federal body, there might arguably be express provision for judicial review in 5 U.S.C. § 702 of the Administrative Procedure Act (APA), ch. 324, 60 Stat. 237 (1946) (as amended). Plaintiffs explicitly disavow any reliance upon the APA, however. Appellants' Reply Brief at 8.

**20.** *California v. Sierra Club*, 451 U.S. 287, 290–91, 101 S.Ct. 1775, 1777, 68 L.Ed.2d 101 (1981).

In determining whether a private right of action is implied in the federal statute, "our focal point," the Supreme Court instructs, is

Congress' intent in enacting the statute. As guides to discerning that intent, we have relied on the four factors set out in *Cort v. Ash*, see 422 U.S. 66, 78 [95 S.Ct. 2080, 2087, 45 L.Ed.2d 26] (1975), along with other tools of statutory construction.[21]

*Cort's* first factor asks whether "the plaintiff [is] 'one of the class for whose *especial* benefit the statute was enacted.'" [22] Plaintiffs contend chiefly that the statutes at issue required the Committee to give "due consideration to ... overall social, economic, [and] environmental ... goals." [23] Plaintiffs' members,[24] as individuals residing and working and businesses near the site of the proposed highway, may benefit from any due consideration given to social, economic, and environmental goals. Further, since they may suffer greater harm than those who are farther removed from the site, Plaintiffs' members may reap greater benefit from any due consideration given to social, economic, and environmental goals. Nevertheless, Plaintiffs have not demonstrated that *Congress,* when enacting 23 U.S.C. § 134 and 49 U.S.C. § 1607, singled out for special concern or favor from all the direct and indirect beneficiaries of these sections those individuals and businesses in close proximity to the site of a proposal in a transportation plan.

*Cort's* second factor asks whether there is "any indication of legislative intent, explicit or implicit, either to create ... a remedy or to deny one." [25] Plaintiffs argue that, when Congress in 1978 amended 23 U.S.C. § 134 and 49 U.S.C. § 1607 to include a duty to give due consideration to social, economic, and environmental goals, federal courts had already recognized an implied private right of action to enforce the assertedly similar provisions in 23 U.S.C. § 138 concerning transportation plans, programs, and projects affecting parklands. Plaintiffs conclude that Congress must have intended federal courts to recognize an implied private right of action to enforce 23 U.S.C. § 134 and 49 U.S.C. § 1607 as well.[26]

We reject the premise that federal court case law had by 1978 recognized an implied private right of action to enforce 23 U.S.C. § 138 against planners at the local level such as the Committee for their activity in developing and endorsing an overarching transportation plan. We therefore need not reach the remaining parts of Plaintiffs' argument here.

To establish the premise that such an implied private right of action had been recognized by 1978, Plaintiffs rely upon this Circuit's decision in *Louisiana Environmental Society, Inc. v. Coleman.*[27] Insofar as it involves 23 U.S.C. § 138, the

---

**21.** *Thompson v. Thompson*, — U.S. —, —, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988), citing for support *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 535–36, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984); *Sierra Club,* 451 U.S. at 293, 101 S.Ct. at 1778–79; *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979).

**22.** *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (1975) (quoting *Texas & Pacific Ry. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916); emphasis in *Cort* original).

**23.** 23 U.S.C. § 134; *see also* 49 U.S.C. § 1607.

**24.** As noted, Plaintiffs assert standing to represent their members. Because the Committee has not challenged Plaintiffs' representational standing, we may assume without deciding that Plaintiffs properly assert representational stand-

ing. *See supra* note 7. Plaintiffs may thus assert on behalf of their members any right of action their members have. Consequently, Plaintiffs may argue that their members are of the class for whose especial benefit the statute was enacted.

**25.** *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088.

**26.** For similarly structured arguments, see generally *Fox,* 464 U.S. at 541, 104 S.Ct. at 841; *Herman & MacLean v. Huddleston,* 459 U.S. 375, 380–87, 103 S.Ct. 683, 686–90, 74 L.Ed.2d 548 (1983); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 378–82, 102 S.Ct. 1825, 1839–41, 72 L.Ed.2d 182 (1982); *Cannon v. University of Chicago,* 441 U.S. 677, 694–99, 99 S.Ct. 1946, 1956–58, 60 L.Ed.2d 560 (1979).

**27.** 537 F.2d 79 (5th Cir.1976).

*Coleman* opinion is devoted to reviewing the district court's review of the so-called "§ 4(f) determination required by 23 U.S.C. § 138 and 49 U.S.C. § 1653(f)," [28] a determination made by the United States *Secretary of Transportation* when approving a particular *program or project*—not an overarching transportation plan as in the present case. Moreover, the opinion does not address the *Coleman* plaintiffs' right to seek judicial relief from the Secretary's determination. It may be that the issue of their right of action was not addressed because it had not been raised.[29] In any event, it seems evident from the Court's case citations and from the district court opinion [30] that the *Coleman* plaintiffs sought judicial review of the Secretary's determination under the Administrative Procedure Act (APA).[31] For the same or similar reasons, Plaintiffs' other cases [32] do not show that federal courts had by 1978 recognized an implied private right of action to enforce 23 U.S.C. § 138 against planners at the local level such as the Committee concerning their development and endorsement of an overarching transportation plan.

*Cort*'s third factor asks whether it is "consistent with the underlying purposes of the legislative scheme to imply ... a remedy for the plaintiff." [33] Plaintiffs argue that an implied private right of action for "special interest organizations" or their members is consistent with underlying legislative purposes because such organizations "are the logical repository of power to assure" the Committee's compliance with statutory requirements. Plaintiffs' tenet here is, however, far from clear in the present legislative scheme. That scheme envisions a "continuing, cooperative, and comprehensive" planning pro-

28. 537 F.2d at 82.

29. *See Burks,* 441 U.S. at 475–76, 99 S.Ct. at 1835–36: The question of respondents' "implied private right of action" had "not been put in issue," and the Court stated, "The question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed without being decided."

30. *Louisiana Envtl. Soc'y, Inc. v. Brinegar,* 407 F.Supp. 1309, 1313 (W.D.La.1976).

31. Ch. 324, 60 Stat. 237 (1946) (as amended).
   We observe that the Louisiana State Department of Highways was also made a party defendant in *Coleman* apparently in connection with asserted violations of other federal law provisions (including the preamendment version of 23 U.S.C. § 134) besides 23 U.S.C. § 138. Plaintiffs here have not contended that these other federal law provisions are so similar to the statutes at issue (23 U.S.C. § 134, 49 U.S.C. § 1607) that the existence of an implied private right of action to enforce these other provisions suggests that Congress, when amending in 1978, intended a private right of action to enforce 23 U.S.C. § 134 and 49 U.S.C. § 1607.
   In any case, there is no discussion in *Coleman* of an implied private right of action against the state highway department. The state highway department may have intervened. The state highway department may have been joined under Federal Rule of Civil Procedure 19 in an action reviewing the Secretary's actions under the APA. The APA itself may have been considered a sufficient basis for reviewing the state highway department's actions. Alternatively, the *Coleman* plaintiffs' asserted right of action against the state highway department may have been assumed because it went unchallenged.
   Finally, the *Coleman* case is in any event not authority for an implied private right of action against *planners at the local level* such as the Committee concerning their development and endorsement of an overarching *transportation plan.*

32. *Atlanta Coalition on the Transp. Crisis, Inc. v. Atlanta Regional Comm'n,* 599 F.2d 1333 (5th Cir.1979); *National Wildlife Fed'n v. Snow,* 561 F.2d 227 (D.C.Cir.1976); *City of Davis v. Coleman,* 521 F.2d 661 (9th Cir.1975); *Lathan v. Brinegar,* 506 F.2d 677 (9th Cir.1974) (en banc); *La Raza Unida v. Volpe,* 488 F.2d 559 (9th Cir. 1973), *cert. denied,* 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1138 (1974); *Coalition of Concerned Citizens Against I-670 v. Damian,* 608 F.Supp. 110 (S.D.Ohio 1984); *Residents in Protest—I-35E v. Dole,* 583 F.Supp. 653 (D.Minn.1984); *Citizens Comm. Against Interstate Route 675 v. Lewis,* 542 F.Supp. 496 (S.D.Ohio 1982); *Joseph v. Adams,* 467 F.Supp. 141 (E.D.Mich.1978); *Citizens Civic Ass'n v. Coleman,* 417 F.Supp. 975 (W.D.Wis.1976); *Louisiana Envtl. Soc'y, Inc. v. Brinegar,* 407 F.Supp. 1309 (W.D.La.), *aff'd in part and rev'd in part,* 537 F.2d 79 (5th Cir. 1976); *Citizens for Mass Transit Against Freeways v. Brinegar,* 357 F.Supp. 1269 (D.Ariz. 1973); *La Raza Unida v. Volpe,* 337 F.Supp. 221 (N.D.Cal.1971), *cert. denied,* 409 U.S. 890, 93 S.Ct. 105, 34 L.Ed.2d 147 (1972), *and aff'd,* 488 F.2d 559 (9th Cir.1973), *cert. denied,* 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1138 (1974).

33. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088.

cess [34] involving multiple administrative actors besides the Committee. The continuing and cooperative element of the process may call upon these other actors to bring to the Committee's attention deficiencies in its performance and to request remedy if necessary. Judicial intervention against the Committee, at least at this early stage (Committee endorsement of the overarching transportation plan), might truncate that process. In any event, the Supreme Court has stated that *Cort*'s third and fourth [35] factors "are only of relevance if the first two factors give indication of congressional intent to create the remedy." [36]

■ We conclude that Plaintiffs have failed to demonstrate that there is implied in 23 U.S.C. § 134 and 49 U.S.C. § 1607 a private right of action for them to enforce these statutes against the Committee for its activity in developing and endorsing the Austin Transportation Plan.

III. *Conclusion*

We conclude that two Plaintiffs satisfy the constitutional standing requirement and that their claims satisfy any constitutional ripeness requirement and do not reach the other Plaintiffs' constitutional standing and the constitutional ripeness of their claims. Further, we conclude that these two Plaintiffs have failed to demonstrate an implied private right of action in their favor under 23 U.S.C. § 134 and 49 U.S.C. § 1607 to enforce these statutes against the Committee for its activity in developing and endorsing a transportation plan. We therefore need not reach any remaining issue of subconstitutional standing or subconstitutional ripeness. On the basis of these conclusions, the judgment of

the district court dismissing Plaintiffs' complaint is

AFFIRMED.

HIGGINBOTHAM, Circuit Judge, specially concurring:

I join in the judgment affirming the district court's dismissal of this case. Our decision that there is no implied right of private action decides this appeal, and I join only in that portion of the opinion of the court.

**34.** 23 U.S.C. § 134; *see also* 49 U.S.C. § 1607.

**35.** *Cort*'s fourth factor asks whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088. The parties have not presented serious argument on this factor. Nor have they presented arguments employing "other tools of statutory construc-

tion" besides those arguments already treated. *Thompson*, —— U.S. at ——, 108 S.Ct. at 516.

**36.** *Sierra Club*, 451 U.S. at 298, 101 S.Ct. at 1781 (citing *Redington*, 442 U.S. at 574–75, 99 S.Ct. at 2488–89); *see also Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146–48, 105 S.Ct. 3085, 3093–94, 87 L.Ed.2d 96 (1985); *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 94 n. 31, 101 S.Ct. 1571, 1582 n. 31, 67 L.Ed.2d 750 (1981).